Case number 20-1910, Juannelious Murray Sr v. Safir Law PLC, Oral Argument, not to exceed 15 minutes per side, Mr. Feingood for the appellant. Okay, Mr. Feingood, you may proceed. Good morning. May it please the court. Um, this case boils down to, uh, several propositions. The case was automatically, uh, this is an adversary proceeding in the bankruptcy court that was automatically dismissed, uh, when the underlying chapter 13 case was dismissed. Um, the adversary proceeding includes three basic, uh, three basic counts. Well, claims one for disgorgement of attorney's fees from a personal, uh, injury action to a turnover of the 60, $61,000 settlement proceeds and three damages for violation of the automatic stay. I think the case boils down to this. The dismissal of a case, I cannot abrogate the bankruptcy court's statutorily imposed duty of review of attorney fees, then by definition, a bankruptcy court does not have discretion to dismiss or abstain from deciding that issue regarding attorney's fees. And that's based on the sixth circuit case of 5,900 associates, uh, 2006 case. And that's, uh, expressly stated at page three 30 of the in-ray 5,900 associates case, but that's just what the, uh, bankruptcy court did in this case. Uh, the underlying chapter 13 was dismissed. Then a day later, uh, the court, the bankruptcy court issued a one sentence order dismissing the adversary proceeding based solely upon the fact that the underlying case was dismissed. Um, I think it was stated a long time ago by, uh, uh, chief justice, John Marshall. I don't recall the name of the case, but, uh, you don't, uh, a court. Can that very well just, uh, what's the word I'm looking for? Uh, well, abrogate counsel here. I didn't find the briefing all that clear about the procedural, um, steps and developments that occurred leading up to this, uh, dispute. Uh, uh, for one thing, when the settlement proceeds came in for this personal injury action and, uh, the law firm had the decision to make how to disperse, there was some pending bankruptcy, uh, as, as I understand it. And, uh, I'm not sure that the, um, law firm, uh, uh, made disbursement pursuant to, uh, orders of the bankruptcy court. And then there were these, all these multiple bankruptcy filings by your client. And it'd be illuminating to know procedurally, how, how, how do we get here in terms of how just procedurally and factually, uh, how, how this all, um, developed, if you wouldn't mind taking a detour, just to fill that in. Sure. Um, Mr. Murray filed the chapter 13 in 2016. In that chapter 13, he listed a pending, uh, action, uh, against all state insurance as one of the assets of the estate, ultimately for one reason or another, the chapter 13. The 2016 chapter 13 case was dismissed, uh, as appears as stated in the, as can be found in the application for attorney's fees by Mr. Murray's bankruptcy attorney in the 2016 case. He states that he requested or that he discussed turning over the personal injury suit proceeds to the bankruptcy estate. And furthermore, the, the proposed plan for that estate states in paragraph of section five says any, any proceeds or damages recovered by or on behalf of the debtor shall be retained pending order of the bankruptcy court. Well, like I say, the case, the underlying or the 2016 chapter 13 case was dismissed. Let me step back. While it was still pending long before it was dismissed, the personal injury attorney, uh, settled the case in Wayne County circuit court, but did nothing, did nothing to actually get the proceeds dispersed by all state insurance. And the evidence would show if the case is allowed to proceed that all state insurance company wrote the check, the settlement check around, I want to say it was August the 6th of 2016. The, the, the 2016 chapter 13 bankruptcy case was not dismissed until I think it was in October. So as stated in the vernacular, uh, in, in the brief, um, basically the personal injury attorney did nothing, did not do the, take the necessary steps to get the settlement money from all state. And certainly by definition did not turn it over to Marshall Schultz, the bankruptcy, uh, attorney for mr. When Elias in the 2006 case, 2016 case, when he requested it. And it all flies in the face of, of, uh, of bankruptcy law. Uh, Mr. Fine. Good. If I could just, uh, I know you're answering judge place question. Your argument argument is basically at the time that 2016 chapter 13 sort of repayment petition was filed. Uh, Mr. Murray has this claim, um, against this other party, all state apparently. Uh, and that claim then gets resolved in, in state court. And your argument is that's a, that was property of the estate. That 61, that claim, which ended up being a settlement of $61,000. Your argument was, is that that was property of the estate and that property of the state, as you argue would have to be, um, administered essentially in the, in the chapter 13 case. Yes. Okay. At some point, the chapter 13 case did get dismissed. Appears that Mr. Murray had serial 13 cases that didn't complete for one reason. Uh, or another, uh, so answering judge place question. Uh, and I think that, um, your, your, your opposing counsel is going to argue that there was no obligation, uh, to turn over that $61,000 to the chapter 13 trustee or the estate. And so how, what's your response if that's the argument? Well, there is a, there is a requirement because once Mr. Schultz requested turnover of the proceeds to the chapter 13 estate, then the burden was on, uh, was on the personal injury lawyer to turn it over. That's right out of the sixth circuit, uh, in Ray Sharon case. Um, the onus, that's not my word. That's the word found in the case. The burden was on the personal injury lawyer to turn it over. And what it comes down to among other things is without, you simply can't wait out, uh, a case. Uh, otherwise there's no incentive for the, uh, personal injury lawyer to comply with the law. And that's discussed regarding a chapter seven case in, uh, the Eastern district of Michigan case in Ray Stinson. Uh, it's very clear that the same thing in that case happened. A case was scheduled by a chapter seven debtor, but settled without, uh, the trustee, uh, usurped the power of the trustee in the chapter 13 case. Uh, the debtor has the same powers as a trustee. The point is judge Rhodes discussed that this flies in the face of, of incentives for a debtor and obviously the debtor's attorney, uh, to comply with the law in this case, the marshaling of assets of a bankruptcy case. Is there any difference in how we should view chapter seven and chapter 13 cases in chapter seven, you've got a trustee appointed and the case goes forward and the trustee administers all property of the estate chapter 13 cases as Mr. Murray's often get dismissed after a month or two or three, because the debtor is not, uh, complying with the plan for one reason or another. Is there any, should we look at this any differently in terms of turnover or obligation, uh, of the, uh, attorney handling the, uh, injury case to, to turn property over to the estate, which I mean, he's probably going to argue. No longer, no longer wasn't a state. No, there is no difference. I don't have a case citation off the top of my head, but, but the cases all across the country state that, uh, a chapter 13 debtor has basically is, is a debtor in possession, just like. Uh, chapter 11 and they have the, uh, it's tantamount to being a trustee. It has the same, same, uh, strong, uh, strong arm powers, uh, et cetera, et cetera, and, and, and when you step back from it for a moment, it comes down to that otherwise, what incentive is there for a debtor and by definition, the debtors attorney who are charged with marshaling assets of an estate to comply with the law and, and, and judge Rhodes in, in, in the Stinson case points out that the automatic stay not only applies to creditors actions against property estate, but it also applies to the debtors obligation to marshal the, is that, uh, the assets of the state? In other words, to not squirrel it away in case it gets dismissed or whatever, so that it can, uh, uh, use those assets. I see your time has expired, but could you just take a few seconds to, uh, to make clear what relief you're, you're seeking here, what is it that you would like this court to. I think it's pretty simple in this case, just to reinstate the adversary proceeding, uh, so that, uh, uh, Mr. Murray can, can, uh, make his case. Uh, the adversary proceeding was dismissed, uh, uh, for the reason stated before, before even an answer was filed. So it's not like we're arguing a 12 B motion or a, or a rule 56 summary judgment motion, uh, we've presented, uh, Mr. Murray presented direct evidence. Uh, that a request for turnover was made the direct evidence being found in the, his previous bankruptcy lawyers, uh, fee application. Okay. That's that's, that's actually sufficient. Uh, you'll, you'll have your rebuttal. Mr. Your honor, Steve Wallach. Um, the, um, uh, Safer law firms settled, uh, a auto neg case on behalf of a plaintiff in July, uh, 2016. There's no, uh, claim that, uh, Safer had knowledge of the bankruptcy. As of the time he settled the case, there were four or five components to the settlement. There was $23,000 that was to be distributed to medical providers. Uh, there was $22,000. That was Mr. Safer's fee. Uh, there were, uh, uh, costs involved. There was 4,000 that was to be, uh, distributed, uh, directly to, uh, Mr the plaintiff, and then there was a $12,000 that was to be paid to, uh, to, uh, discharge a litigation, uh, loan lien, uh, that had been placed on, uh, the case. Uh, so that's the settlement. Uh, it's between all state and, um, uh, and, uh, uh, Safer law on behalf of plaintiff. At the time, the governing law, the controlling law was a case called, uh, medical center versus state farm. Um, and it was a, it was a Michigan court of appeals case. And the case held, uh, that medical providers had an independent, had independent standing to bring an action against an insurer for payment of no fault benefits. In other words, they had a direct right of the, the medical providers had a direct right of action against all state, uh, for the, uh, deaths, uh, that, uh, plaintiff had incurred, uh, in, uh, in, as a result of the accident. Um, that's the backdrop and the court holds the court in covenant. It's a 2015 decision holds that in order to discharge, uh, that liability, the, uh, insurance carrier, uh, needs to cause an order to be entered in the state court, providing for a distribution of the settlement proceeds and the no fault benefits to be paid under the settlement to, uh, to the medical providers. And if the, uh, if the insurer does that, um, then it has no worry about settling a suit all over, uh, all over the, in Detroit, the tri-county area or wherever. Um, so the case was settled on, on that premise, um, that these medical providers, uh, would be paid out of the settlement and that there would be an order entered, um, so that the insurer could be discharged. Um, after the settlement, um, uh, Mr, uh, Safer Law receives a call from, uh, uh, from plaintiff's bankruptcy counsel, um, who asks for, who says that, uh, the 23,000 hours to be paid to the medical providers constitutes pre-petition debts, uh, and should be, um, uh, at least it's alleged says should be, uh, uh, remitted to the that complaint, uh, that the, uh, that the plaintiff's, uh, uh, bankruptcy counsel, uh, asked for a remission of the entire $61,000 settlement. That's kind of absurd. I mean, wouldn't ask, it's not what happens, wouldn't ask for the attorney to send his attorney's fees to the trustee, uh, or the, um, or his client's, uh, share of the settlement of the trustee or his, uh, um, or, uh, the cost of the action to be set or the, uh, money that was leaned up the portion, the $12,000 portion of the settlement that was leaned up to be sent to the trustee. So what he asked is, or what he suggests is that the $23,000, uh, in medical, uh, um, in payment to, uh, discharge medical debt be sent to the trustee. Uh, at that point, um, Mr, uh, uh, Mr. Uh, safer law is in a very difficult position, uh, because it's settled a case based on the premise that, uh, that there's going to be an order entered, uh, dispersing, um, these, uh, the 23,000 hours, the eight medical providers and discharging the, uh, the debt of, uh, of the debt of the, of all state. Uh, to these eight medical providers. Um, and, uh, uh, because, uh, the medical providers again have an independent right of action, uh, against, uh, uh, against, uh, uh, the insurer all state, uh, under the law prevailing at the time, two years later, uh, covenants reversed, uh, a year or so after that, uh, the, uh, state legislature of Michigan legislatively reverses the Supreme court on that. But that's an aside. Um, so what does miss, what does safer law to do? Um, when they've got this request? Well, there are reasons not in the record for why, uh, why an order is not entered right away. But let's assume that Mr. that safer law entered, uh, the order, um, of disbursement. That was a premise of the, um, uh, of the settlement and that, um, that order of disbursement that was entered October 28th, 2016 is, uh, contained as an exhibit to the adversary proceeding. Um, and, and it, it expressly approves the settlement provides for the disbursement of all components of the settlement and discharges, um, the insurer, um, uh, with respect to, uh, the medical providers claims, let's assume that, uh, that that order was entered, uh, before the bankruptcy was dismissed as plaintiff claims. It should have been, what would Mr. What would safer law, um, have been able to do with that point? Um, had safer law, uh, remitted the $23,000 to the trustee. Well, it would have been a contempt of this order. Um, it would have been personally liable. It would have been liable for the $23,000 probably would have been subject to an attorney fee claim and the professional embarrassment of being held in contempt. Was there, was there some amount of money that was due to Mr. Murray, like $4,000? That's right. That's right. Oh, he had, he had borrowed money, uh, from go ahead. Okay. The safer law remit that $4,000 to the trustee. What happened with that? It wasn't requested. Um, and safer law didn't because, uh, that would have been, um, uh, that would have been the debtor's, uh, right to remit that or do what he wanted with it. Uh, but again, is that what, what would that, could you call that property of the estate that would be available for distribution to equitably to creditors or not that, um, well, it would have been property of the estate, whether or not, uh, there wasn't one, there wasn't a turnover request, whether or not there would have been an obligation of Mr, um, uh, of, uh, safer law, uh, to have remitted that. I can't say the, uh, the plan did not provide for funding out of the settlement proceeds, um, that was not part of his disposable income can make virtually no plan payments for most of these bankruptcies, um, out of disposable income, his obligation was to fund the plan out of disposable income. He does none of that. Um, but so, um, so as the 4,000 hours, there was no request for turnover and I can't really quite answer. It was a property of the state. Yes. Um, but so was the, uh, was the 23,000 hour component, um, uh, property of the state, no, um, it was not, was the cause of action property of the state. But, uh, it was burdened, uh, by other kinds of claims against it, such as the lien, such as the, um, the, uh, all states, um, need to, uh, discharge its liability, uh, because the state for law still have the, uh, $61,000 in proceeds. Oh God, no. So the order was entered in October, 2016, October 28th, 2016. And the order provided, uh, and that's the, that is the point in plaintiff plaintiff admits this, that is the point at which, uh, uh, safer law received the check, the, uh, insurer was not going to, um, give safer law this check until this order was entered. But that's when safer law receives a check. And then, uh, and then the $61,000 is dispersed in accordance with the, uh, with the order after the bankruptcy is dismissed. Um, and when, uh, you were safe for law received the request from the trustee, excuse me, I mean, from the, um, insurance and received a letter from the trustee. Um, why wouldn't say for law, if it wanted to protect itself, simply, uh, petition the bankruptcy court to approve the disbursements that, uh, safer law thought was, was appropriate. Pamela that way. Well, um, one, the, the, the letter didn't request, um, turnover, um, uh, that came in September, um, two, I mean, there are reasons if you ask, I'll tell you that, that, um, plaintiffs plaintiff was refusing to sign his waiver of, um, of future benefits, which was a condition of the, uh, settlement. And he didn't mail that in. He didn't, he didn't, uh, submit that or give that to the law firm until the second week of October. Uh, but, um, but in terms of that, that's a large burden to place on, um, on, um, uh, uh, on safer law. Um, and, um, at that point, there's no, pardon? Yes. But that would have, uh, uh, that would have, uh, resolved the matter. The bankruptcy court could have decided, uh, the, the issues as to, uh, who was entitled to what and what property, what part of the proceeds belong to the bankruptcy estate or not, and everybody would have been protected. Well, um, say for long, um, had no turnover obligation with respect to the 23,000 hours, that was not undisputed property of the estate. And there is no turnover obligation, uh, absent, um, uh, uh, uh, absent the, uh, undisputed, it didn't have to turn over the, um, proceeds immediately unless ordered by the, by the bankruptcy court or some other court, but it could have petitioned the bankruptcy court, it could have. Uh, held the money in the, in the, uh, uh, client trust account, pending the disposition of the issues about a bankruptcy court, he could not say for law could not get the money until the order was entered. So until the order of disbursement was entered, discharging all states debt to the, um, uh, to the, um, uh, provider. So he did not have possession of 61,000 hours or a check for 61,000 hours. And he couldn't negotiate it absent entry of the order. So assume he'd entered the order, um, before, uh, before, which is what plaintiffs been asking, uh, or, uh, saying he did wrong, assume he entered the order, what could he do then? Um, well, um, yes, I suppose he could have, um, uh, spent, uh, uh, the, I don't know what would have obligated him, uh, to do that at that time. Um, would it, would it, would it be that abstract, by the way, I guess there's a question in terms of obligations. Would it be that there is a, that the, the debtor has filed a chapter 13 has listed as an asset, a claim, I guess, it's against all state. Um, and, uh, safer is representing, um, I don't, they're representing all state, whoever they were representing in connection with this settlement. And, and so that all state would be aware and presumably safer with that. There's this claim of the bankruptcy, the debtor, uh, against all state that's being compromised, there's going to be a settlement and is, uh, is, is there an obligation at that point, uh, to, to disclose to the bankruptcy estate chapter 13, trustee or debtor, uh, that there's going to be this compromise and as judge Clay says that the money's, uh, $61,000 proposed to be apportioned in various ways and the bankruptcy court would have a chance to, um, rule upon that. I mean, that's what happens. I would assume in most settlement situation. No, no, it doesn't happen in thirteens. It absolutely doesn't. That goes exactly to your question. And, uh, there are, uh, there's a January, um, uh, 2000, uh, 2021 decision. Um, that makes that distinction. I cite a case called Boker. Uh, that's out of, uh, that's not in Michigan and not in the sixth circuit. Um, uh, that talks about the distinction between a 13 and a seven. Um, but in, uh, uh, in a, um, in, in Ray Janish, uh, uh, uh, uh, judge Tucker, um, follow Boker and, uh, clarified, uh, that the distinction, I just want to say that there are all sorts of other reasons why this case should be dismissed. Uh, claims have been abandoned claims. Uh, there's no standing, uh, for the, and then I just want to make sure you appreciate that, uh, Chicago V Fulton, uh, which is the Supreme court case that was decided in January. Uh, clearly, um, uh, clearly disposes of, uh, plaintiff's automatic stay claim. And, uh, there's, I'm sorry, we didn't get to talk about that. Uh, but in that, uh, that automatic state claim is premise on the, uh, argument that, uh, the automatic state language, uh, the language of three 63, a three affirmatively required Mr. Safer to do something the Supreme court held in, uh, city of Chicago versus. Uh, versus, uh, um, uh, uh, Fulton, there is no such obligation. That's not, uh, how, uh, you can appropriately read or properly read, uh, section three 63, a, um, and so that's a case that disposes of the heart of plaintiff's claim. Um, there's no standing, uh, claims have been abandoned. All right, Mr. Wallach, thank you. There may be a lot of space to affirm the dismissal of these adversary proceeding, but we don't really know, uh, why the district court did it other than the district court said, because the bankrupt, the chapter 13 had been dismissed. Therefore I'm going to dismiss the adversary proceeding, but there's no real, there's no other reason. Uh, would it be any harm to remand it to allow to be made as to why it should be dismissed? It would be enormously harmful. Um, it's, it's, this has been, this has been a travail, uh, for my client. I believe it's vexatious. Uh, I look last night, um, at, uh, Russ quicks, uh, uh, car house, I think versus marathon. There are 400 cases in the sixth circuit by the decisions of sixth that say, uh, the court, uh, must affirm, uh, uh, even if, uh, if there are reasons in the record that support, uh, affirming the lower court, even if those records were not, those reasons were not relied on, uh, by the, uh, by the, um, uh, the lower court. Um, and now there are a lot of cases that put that in the, that make that, that, that frame that as a mandatory obligation by the sixth circuit. Other cases that say may affirm. Uh, but in any event, um, this has gone on long enough. You look at the backdrop. This is such as someone manipulating the system, six bankruptcies. Uh, none of them are what the plan confirmed. The plan wasn't confirmed here. Um, this is, it just goes on and on and on. Uh, who is he who benefits? What, what are the. Um, where does the judgment that he's seeking, uh, even go? Um, you can't reopen. Uh, he, he, he seeks in count one, uh, under rule 60 to set aside, um, the, uh, dismissal order in the 2016 bankruptcy case. Um, and, uh, the rule 60 standard is a miscarriage of justice. Um, there's no miscarriage of justice here. He talks about vindicating the court's authority to, uh, independently review or review, uh, attorney's fees. Well, that's not, well, Mr. Plaintiff has no standing for that purpose or no standing for any of this. And so he's asking for, uh, for a judgment in favor of a 2016 bankruptcy case, uh, bankruptcy, um, uh, estate, uh, that, um, no longer exists. Hasn't existed. Never will exist. Uh, he's abandoned, uh, his, uh, his, uh, uh, independent action count one. He didn't appeal that he abandoned count one, which says seeks to set aside the 2016 bankruptcy court dismissal order. Um, and so where does he, where does he go? Where does the, where does the money go that he's seeking? Where would a judgment go? It makes, it makes not the bit of it's not, it makes not the slightest bit of sense, um, to, uh, to go forward with this case any further than it's gone. It's made sense to, to file it, to appeal it, to appeal it again. Um, and it certainly wouldn't make sense to, um, remand it. And, um, and so would it make any sense? I know that I'm sorry, go ahead. Make any sense at this time to send it to our mediation office, since there doesn't seem to be very much at stake here. No, I, I really think that it's, um, I think if I, if the, if the court. My brief lays it out. Um, and there is no merit to this appeal. Uh, yes. Uh, the, the, uh, bankruptcy court, uh, preemptively dismissed it. Um, most, none of the reasons that I've given you, uh, for a pulling a dismissal involved discretion. They all involve record facts that support dismissal. Um, and there's every reason to just put my client out of his misery, put this case out of its misery. Um, I, I think that, uh, um, it's my client's bewildered. Um, I completely understand it. Um, if he had, if he had known about the, uh, the bankruptcy before he settled the case and said, well, there's this bankruptcy that wouldn't have been a settlement. There was no money to turn over. He had possession of no property that he could turn over. Um, he wasn't ever going to have possession of any property that he could turn over during the pendency of this third bankruptcy of six that were all in my view, bad faith. And, uh, the, uh, you could just, you take, you could take judicially notice of, of some facts that are in the record, uh, as to, uh, why, uh, these cases kept getting found. Certainly the mortgage company that was trying to foreclose on, uh, on, uh, miss on plaintiffs, uh, home, uh, for five years, um, that kept getting, uh, a bank's repetition filed the day before, uh, a sheriff's foreclosure sale, uh, beliefs that, that this was, uh, that the bankruptcy petitions were being filed in bad faith. Um, I just, uh, uh, I just don't know why, uh, this case should go on any longer. Uh, there's many, uh, bases on which to affirm them. I haven't even talked about them all affirm the, uh, the bankruptcy court. And, um, it, it just, it just rewards. Um, I think it just rewards conduct, um, uh, that should be deterred really. And, um, and I think that, uh, there are, I think the distinction between a 13 and a seven is very important. I think the fact that there only was a request for $23,000 to be turned over is very important. I think the legal backdrop, uh, of state court law is very important. Um, okay. Thank Mr. Wallach. I think we understand your argument. This is quite a tangled, uh, yes. Uh, that, uh, I understand why there's a suggestion that maybe the mediation office trying to untangle some of this, but, uh, I think we get your, uh, get your argument, uh, and certainly appreciate it, uh, uh, Mr. find good, uh, you've got some rebuttal. Maybe you could start with the distinction between chapter sevens and chapter 13, as Mr. Wallach has, uh, argued. I can say, I don't have the citation off the top of my head, but basically chapter 13 debtor is a debtor in possession, just like a chapter 11 for a corporation is a debtor in possession. And they have, uh, they also have, uh, the right to demand, uh, turnover of a state assets. This, uh, claim against all state was clearly listed as an asset of the estate. Was it listed as, uh, in the chapter 13 plan in terms of paying creditors? Was it going to? Yeah, yeah. Proceeds were going to be used to pay creditors. Yes. At least I mentioned it in, uh, in at least, uh, one or both of my briefs, the largest medical provider creditor, Mendelsohn Kornblum was listed, uh, as a creditor, uh, chapter 13. So basically what the personal injury lawyer did in this case was basically usurp the job of the debtors bankruptcy lawyer, making all these decisions for him about whether or not he should turn over the proceeds of the estate. Once Mr. Schultz requested him to do so. That's why the onus as stated in in Ray Sharon, uh, the sixth circuit said that once a request for turnover has been made, the onus is upon the party in possession of the property to come into bankruptcy court and object to it. And in this case, presumably, uh, at that point, uh, Mr. Safer would make all these arguments that he's bootstrapping, uh, at this point. Okay. He doesn't get to just sit there and, and, uh, not do anything once requested by the debtors attorney to turn over. According to in Ray Sharon, uh, once, once Mr. Schultz requested turnover of the, of the assets, then it was incumbent on Mr. Safer, the personal injury lawyer. To either turn it over or file an objection and make all these arguments to the bankruptcy court. Like, I think it was judge clay that, uh, was discussing, isn't this something for the bankruptcy court to sort out? Isn't that why we have a bankruptcy court? Uh, talking about the, uh, different bankruptcies of, uh, of, uh, Mr. chapter 13 is filed by Mr. Murray is just the, all the, uh, uh, Pelley is doing in, in, in, by arguing that is making the proverbial, Oh, he was a difficult client argument, which the court, uh, in, in Ray Marin gave short shrift to in Ray Marin is the Colorado bankruptcy case cited by the sixth circuit in 5,900 associates saying. There's no other way for an attorney to be paid than by first bringing, uh, asking for approval of his fees to be reviewed by a bankruptcy court. And as I mentioned earlier in, in my argument, uh, the proposed plan, paragraph CC of section five of the proposed plan specifically stated any proceeds or damages recovered by, or on behalf of the debtor shall be retained pending order of the bankruptcy court, which goes back to judge clays, a line of questioning, isn't this something for the bankruptcy court to have sorted out? It's certainly not sorted out by automatically dismissing a case for which is, is, is, is confusing as it might appear to be, um, in Ray Wollaber, uh, the sixth circuit case from 2019, uh, allows for bringing, uh, uh, a violation of automatic stay and I believe turnover proceeds action. In a, from a, from a, uh, previous chapter 13 case in a subset that had been dismissed in a subsequent case. So it's confusing as it appears. It's not unheard of, uh, is it Mr. Feingold? I asked this question to the other side. I mean, there's not a lot of money involved in this case, and we, we rarely see cases where the maximum is $61,000. Um, is there any, uh, point in, uh, perhaps referring this to our mediation office at this point? Um, we had, uh, let's, we did not object to, uh, mediation when it was first, uh, uh, proposed by the court, uh, you know, last year. Did it go through mediation? I don't think it did. No, no, it didn't because there, there was an objection by the to mediation. All right. Your, your view, your, your view of maybe, uh, it may be beneficial to go to mediation at this point. I never say, I never say never short answer is yes. Why not? All right. Thank you. All right. I have no further questions. Okay. Nothing, uh, uh, further from any of the other judges, uh, Mr. Wallach, you wanted to say something about mediation. You've already addressed it. Do you have something real quickly? Just on that last point, if, uh, uh, if that's what the court believes we should do, um, to my. No, I, I just always explore it when we have a case, that's not really a lot of money at stake. I mean, the attorney fees in this case, they're going to exceed whatever. Well, you can imagine the, the insurer and the insured have sharply different views on this, whatever the court, it may be that, uh, uh, you may want to reach out to the mediation office or, you know, I can let them know that you're at least amenable to mediation and seem to be some really fundamental, uh, differences in how chapter seven and chapter 13 work here and whether in chapter 13, a debtor has these so-called strong arm powers that the debtor, I don't want to get into the merits of it. Um, that you have in chapter seven. I just think this could be hashed out, uh, with the mediation office very easily. Um, uh, but that's not for us to do. May I submit the two January decisions for, to the court that are, I think are very important to the outcome here. Um, uh, well, you should have, whatever you've had in your, uh, okay. Well, they're, they're okay. Uh, are you, are you asking really to submit some sort of a supplemental? Yes. We'll just on the topic of the two decisions, two recent intervening decisions. Right. Okay. Uh, why don't, uh, both parties would have, uh, I'll give you, uh, seven days from today to submit, uh, just, um, anything you want to submit on these two intervening decisions from the time the briefing was completed until now, sort of rule 28 J in essence letter, right. Um, that, uh, should not exceed, uh, three pages and length seems to me it could be one or two pages. Thank you kindly for your patience. Yeah. Um, I do, you know, I think you should at least consider, uh, mediation and it sounds like you have no objection. Maybe to me, just reaching out to our mediation office to, to reach out to you. Is that something you're interested in? Not when I have to, I have to speak with my client with it, but I, yes, I think, but I think that's fine. Okay. Yeah. Um, this is my obligation is yes. Okay. Thank you. Well, thank you. Thank you for your, your arguments. Quite a, quite a, uh, quite a case, uh, with, um, okay. Um, can somebody submit it? Thank you both for your arguments and, uh, thank you, uh, uh, taken under submission and, and, uh, uh, clerk may call the next case. Thank you.